UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
DIVISION OF SHREVEPORT

| | | |
|---|---|---|
| TOLA MAE JAMES, JOHNETTA, COLEMAN, AND ANGELA JACKSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF REV. JOHN HENRY JAMES | § | CIVIL ACTION NO. 5:21-CV-02407-SMH-MLH |
| V. | § | JUDGE S. MAURICE HICKS, JR. |
| PMG OPCO-WASHINGTON, LLC D/BA BOOKER T. WASHINGTON SKILLED NURSING & REHABILITATION AND KOURTNEY BROWNLEE | § | MAGISTRATE JUDGE HORNSBY |

**DEFENDANTS' RESPONSE IN OPPOSITION TO REMAND**

## Table of Contents

I. PRELIMINARY STATEMENT ................................................................ 1

II. STATEMENT OF FACTS ................................................................... 1

   A.   Procedural History And Factual Underpinnings Of This Case ................... 1

   B. The COVID-19 National Public Health Crisis ................................... 3

      1. The PREP Act And Public Health Threats ................................... 6

      2. Congress' Delegation Of Authority To HHS In A Public Health Crisis ...... 6

      3.   PREP Act Immunity, A Special Federal Court, And A No-Fault Compensation Fund Protects And Encourages Private Partnership In Public Health Emergencies ........ 8

   C.   HHS Also Spearheads The Nation's Critical Infrastructure - Healthcare And Public Health Sector ........................................................... 9

III. ARGUMENT AND CITATIONS OF AUTHORITY ...................................... 11

   A.   The PREP Act Requires That Any Litigation Of This Case Must Be In Federal Court 11

      1. The PREP Act Expressly Provides For An "Exclusive" Federal Cause of Action Through An "Exclusive" Federal Litigation and Administrative Process ...................... 11

      2. The PREP Act Completely Preempts State Causes of Action ................... 14

      3. Plaintiffs' Petition "Arises Under" The PREP Act Thereby Creating Federal Removal Jurisdiction ........................................................... 16

      a. The PREP Act Applies To "Non-Use" Of Countermeasures ............... 16

      b. HHS's Interpretation Of The PREP Act Is Entitled To The Force Of Law ...... 18

   B.   The Embedded Federal Question Doctrine Requires This Action Be In Federal Court 19

      1. BTW Is A "Person" Within §1442(a)(1) ...................................... 21

      2. BTW Performed Acts Under Direction Of Federal Officer ................... 22

      3. BTW Has Asserted A Colorable Defense .................................... 24

IV. CONCLUSION ........................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Avondale Indus., Inc.,* 1994 WL 679827 (E.D. La. Dec. 5, 1994) ........................... 21

*Auer v. Robbins*, 519 U.S. 452 (1997) ........................................................................................ 19

*Avco Corp. v. Aero Lodge No. 735, Int'l. Ass'n of Mech.s and Aerospace Workers,* 390 U.S. 557, 560 (1968) ........................................................................................................................ 13, 16

*Beneficial National Bank v. Anderson*, 539 U.S. 1(2003) .......................................... 12, 14, 15, 16

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010) ................................................................. 22

*Bruesewitz v. Wyeth, LLC,* 562 U.S. 223 (2011) ................................................................... 14, 15

*Butler v. Coast Electric Power Ass'n*, 926 F.3d 190 (5th Cir. 2019) ......................... 20, 21, 22, 24

*Caver v. Central Alabama Electric Cooperative*, 845 F.3d 1135 (11th Cir. 2017) ..................... 20

*Chevron U.S.A,, Inc. v. Nat. Resource Defense Council*, 467 U.S. 837 (1984) ........................... 18

*Christensen v. Harris Cty.*, 529 U.S. 576 (2000) ........................................................................ 19

*Claflin v. Houseman*, 93 U.S. 130 (1876) ................................................................................... 11

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.,* 463 U.S. 1 (1983) ............ 11, 14

*Franco v. Mabe Trucking Co., Inc.,* 3 F.4th 788 (5th Cir. 2021) ................................................ 14

*Fung v. Abex Corp.,* 816 F. Supp. 569 (N.D. Cal. 1992) ............................................................ 23

*Garcia v. Welltower OpCo Grp. LLC,* 2021 WL 492581 (C.D. Cal. Feb. 10, 2021) ............. 17, 18

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.,* 545 U.S. 308(2005) ..... 19, 20

*Gulf Offshore v. Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981) .................................................... 13

*Gunn v. Minton*, 568 U.S. 251 (2013) ........................................................................................ 19

*Hook v. Morrison Milling Co.*, 38 F.3d 776 (5th Cir. 1994) ....................................................... 18

*In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457 (3d Cir. 2015) .......................................................................................................... 21

*In re WTC Disaster Site*, 414 F.3d 352 (2005) ............................................................... 12, 13, 15

*Jefferson Cty. v. Acker*, 527 U.S. 423 (1999) ............................................................................. 21

*Jones v. Legacy Management Group of Louisiana, LLC,* 2021 WL 3416993, R.&R. (W.D. La. July 7, 2021) ................................................................................................................................... 17

*Latiolais v. Huntington Ingalls, Inc.,* 951 F.3d 286, 290 (5th Cir. 2020) .................. 21, 22, 24, 25

*Mitchell v. Advanced HCS*, 2021 WL 1247884 (N.D. Tex. Apr. 5, 2021), appealed, No. 21-10477 (5th Cir.) ................................................................................................................................... 13

*Rachal v. Natchitoches Nursing & Rehabilitation Center LLC*, NO. 1:21-CV-00334 (W.D. La. Aug. 9, 2021) ...................................................................................................................... 12, 13

*Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012) ................................................................. 22

*Russel v. Irving Place Associates LP*, 20-CV-805, R. & R. (W.D. La. Aug. 5, 2021) ..... 13, 15, 16

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983) ..................................................................... 15

*Singh v. Duane Morris LLP*, 538 F.3d 334 5th Cir. (2008) ........................................................ 19

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ........................................................................... 19

*Tafflin v. Levitt*, 493 U.S. 455 (1990) ........................................................................................ 11

*Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007) .............................................................. 21, 23

*Willingham v. Morgan*, 395 U.S. 402 (1969) ........................................................................ 21, 24

*Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998) ............................. 22, 23

*Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820 (1990) ...................................................... 11

**Statutes**

28 U.S.C. §1441(a)(1) .......................................................................................................... 22, 25

28 U.S.C. §1447(d) ................................................................................................ 16

28 U.S.C. §2284 ...................................................................................................... 13

42 U.S.C. §201 .......................................................................................................... 6

42 U.S.C. §247d ............................................................................................... 1, 6, 11

42 U.S.C. §247d-6d(a)(2) ................................................................................... 9, 15

42 U.S.C. §247d-6d(b)(1) .............................................................................. 6, 8, 24

42 U.S.C. §247d-6d(b)(2) ................................................................................... 6, 8

42 U.S.C. §247d-6d(b)(2)(B) ................................................................................... 8

42 U.S.C. §247d-6d(b)(3) ........................................................................................ 8

42 U.S.C. §247d-6d(b)(7) ................................................................................... 8, 18

42 U.S.C. §247d-6d(b)(9) ........................................................................................ 8

42 U.S.C. §247d-6d(c) ........................................................................................ 7, 16

42 U.S.C. §247d-6d(c)(1) ................................................................................. 12, 15

42 U.S.C. §247d-6d(c)(1)(A) ................................................................................. 17

42 U.S.C. §247d-6d(c)(2)(A) ............................................................................. 7, 17

42 U.S.C. §247d-6d(c)(2)(B) ................................................................................... 7

42 U.S.C. §247d-6d(c)(3) ............................................................................. 9, 12, 15

42 U.S.C. §247d-6d(c)(4) ........................................................................................ 17

42 U.S.C. §247d-6d(c)(5)(A) ................................................................................. 17

42 U.S.C. §247d-6d(d) ....................................................................................... 9, 15

42 U.S.C. §247d-6d(e) ............................................................................................. 16

42 U.S.C. §247d-6d(e)(10) ..................................................................................... 15

42 U.S.C. §247d-6d(e)(3) ....................................................................................... 15

42 U.S.C. §247d-6d(e)(3)(A) ................................................................................. 17

42 U.S.C. §247d-6d(i)(1) .......................................................................................... 6

42 U.S.C. §247d-6d(i)(2)(iii) .................................................................................... 5

42 U.S.C. §247d-6d(i)(5) .......................................................................................... 7

42 U.S.C. §247d-6d(i)(6) .......................................................................................... 7

42 U.S.C. §247d-6d(i)(7) .......................................................................................... 6

42 U.S.C. §247d-6d(i)(8) ...................................................................................... 7, 8

42 U.S.C. §247d-6d(i)(9) ....................................................................................... 20

42 U.S.C. §247d-6e ......................................................................................... 1, 8, 11

42 U.S.C. §247d-6e(a) .......................................................................... 9, 11, 12, 24

42 U.S.C. §247d-6e(d) ............................................................................................ 16

42 U.S.C. §247d-6e(d)(1) .................................................................................. 9, 12

42 U.S.C. §247d-6e(d)(2) ......................................................................................... 9

42 U.S.C. §247d-6e(d)(4) ............................................................................ 9, 11, 24

42 U.S.C. §247d-6e(d)(5) ......................................................................................... 9

42 U.S.C. §5195c ................................................................................................... 1, 9

42 U.S.C. §5195c(b)(2) ........................................................................................... 10

42 U.S.C. §5195c(c)(1) ........................................................................................... 10

42 U.S.C. §5195c(c)(3) ........................................................................................... 10

42 U.S.C. §5195c(e) ................................................................................................ 10

42 U.S.C., Ch. 6A, subchapter 2, part B .............................................................. 6

Air Transportation Safety and System Stabilization Act, ("ATSSSA"), Pub.L. No. 107-42, 115
Stat. 230 (2001)..................................................................................................... 12

**Other Authorities**

*Administer*, Merriam-Webster, available at https://www.merriam-webster.com/dictionary/administer (last accessed July 8, 2021) ............................................. 17

Advisory Opinion 20-01 (May 19, 2020) .................................................................. 8

Advisory Opinion 20-04 (Oct. 23, 2020).......................................................... passim

Advisory Opinion 21-01 (Jan. 8, 2021) .................................................................. 17

CDC, Frequently Asked Questions (updated Mar. 1, 2020), available at https://web.archive.org/web/20210312023959/https://www.cdc.gov/coronavirus/2019-ncov/faq.html#People-at-Higher-Risk-for-Severe-Illness FA. .................................................. 4

CMS Guidance for Infection Control and Prevention Concerning Coronavirus (COVID-19): CMS Guidance for use of Certain Industrial Respirators by Health Care Personnel (Mar. 10, 2020), https://www.cms.gov/files/document/qso-20-17-all.pdf ....................................... 23

CMS Guidance for Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes (Mar. 13, 2020), https://www.cms.gov/files/document/qso-20-14-nh-revised.pdf ............................................................................................ 23

CMS Update and Interim Guidance on Outbreak of 2019 Novel Coronavirus (Feb. 1, 2020), https://emergency.cdc.gov/han/HAN00427.asp ...................................................... 23

CMS, "CMS Prepares Nation's Healthcare Facilities for Coronavirus Threat" (Feb. 6, 2020), https://www.cms.gov/newsroom/press-releases/cms-prepares-nations-healthcare-facilities-coronavirus-threat ............................................................................ 23

CMS, "Trump Administration Announces New Nursing Homes COVID-19 Transparency Effort" (Apr. 19, 2020), https://www.cms.gov/newsroom/press-releases/trump-administration-announces-new-nursing-homes-covid-19-transparency-effort .............................................. 23

CMS, COVID-19 Long-Term Care Facility Guidance (April 2, 2020), https://www.cms.gov/files/document/4220-covid-19-long-term-care-facility-guidance.pdf ... 23

Cybersecurity & Infrastructure Security Agency, *Healthcare and Public Health Sector*, available at https://www.cisa.gov/healthcare-and-public-health-sector ............................................ 10

Declaration, 85 Fed. Reg. 15,198 (Mar. 17, 2020) ............................................... passim

Executive Order 13800, 85 Fed. Reg. 22,391 (May 11, 2017) ...................................... 10

Executive Order 13944, 85 Fed. Reg. 49,929 (Aug. 6, 2020) ...................................... 10

FDA, Personal Protective Equipment, available at https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices/personal-protective-equipment-euas ................................................. 7

Fourth Amended Declaration, 85 Fed. Reg. 79,190 (Dec. 3, 2020) ........................... passim

HHS Response Letter (Aug. 14, 2020) ........................................................... 8, 23

HHS, Emergency Use Declaration, Federal Register/ Vol. 85, No. 47 (Mar. 10, 2020), https://www.govinfo.gov/content/pkg/FR-2020-03-10/pdf/2020-04823.pdf ........................ 23

Presidential Policy Directive 21 -- Critical Infrastructure Security and Resilience, The White House (Feb. 12, 2013)................................................................................ 10

Second Amended Declaration, 85 Fed. Reg. 35,100 (June 8, 2020) ............................ 4, 6

Statement of Organization, Functions, and Delegations of Authority, 85 Fed. Reg. 47,228 (July 7, 2020) ............................................................................................. 18

**Regulations**

42 C.F.R. §§110.1–110.100............................................................................ 9, 12

COME NOW PMG OPCO-WASHINGTON, LLC d/b/a BOOKER T. WASHINGTON SKILLED NURSING & REHABILITATION and KOURTNEY BROWNLEE ("Defendants" or "BTW") and file this Response to Plaintiffs' Motion to Remand showing as follows:

## I. PRELIMINARY STATEMENT

This involves a global pandemic and public health emergency, which has lasted some nineteen months, killed over 660,000 people in the United States alone, and brought our nation's healthcare facilities to a breaking point. Congress prepared for such a threat and its tragic impact when it enacted the statutory tools to handle such a crisis and litigation aftermath. Through the Public Readiness and Emergency Preparedness ("PREP") Act, 42 U.S.C. §§247d-6d, 247d-6e and the Critical Infrastructures Protection Act ("CIPA"), 42 U.S.C. §5195c, Congress ensured that the nation could enlist private entities in its public health cause and provided immunity and other litigation protections, particularly express exclusive federal jurisdiction, to such private entities.

## II. STATEMENT OF FACTS

### A.    Procedural History And Factual Underpinnings Of This Case

On May 21, 2021, Plaintiffs filed a Petition in the First Judicial District Court, Caddo Parish, Louisiana, alleging violations of the standard of care against BTW related to injuries sustained as a result of the COVID-19 public health emergency ("Action") and served BTW on July 9, 2021. *See generally* Petition. BTW timely removed this Action, asserting Plaintiffs' claims are expressly and completely preempted by federal law, warrant federal court adjudication under the *Grable* doctrine, and implicate federal officer removal jurisdiction. *See generally*, Defs.' Notice of Removal (Aug. 9, 2021). BTW subsequently filed its Motion to Dismiss, briefing of which was stayed on September 9, 2021 pending resolution of the present remand issue.

1

Decedent Rev. John Henry James ("Decedent James"), a resident of BTW's skilled nursing facility, is alleged to have contracted COVID-19 and died therefrom. Petition, ¶¶ 1–4, 7–8. Plaintiffs' allegations amount to acts and omissions regarding failures to exercise reasonable care in the administration and use of COVID-19 covered countermeasures, the negligent implementation of a COVID-19 covered countermeasure program, and the negligent maintenance and operation of a COVID-19 facility, to-wit:

- Alleging BTW as a nursing and rehabilitation facility. *Id.* at ¶ 2;

- Alleging Decedent James was a resident at BTW. ¶ 4;

- Alleging COVID-19 requirements imposed on skilled nursing facilities by Authorities Having Jurisdiction ("AHJs"),[1] such as the Centers for Disease Control and Prevention ("CDC") and Louisiana Department of Health ("LDH"); ¶ 7

- Alleging "Fail[ure] to take *timely*, *proper* and *effective* actions to eliminate and/or minimize the risk for [COVID-19] exposure". ¶¶ 10A, 12A (emphasis added);

- Alleging "Fail[ure] to *timely* and *adequately* assess the risk … and to initiate an *appropriate* level of preventive actions, interventions and measures to prevent [COVID-19] exposure." ¶¶ 10B, 12B (emphasis added);

- Alleging "Faili[ure] to *timely* and *properly* monitor, detect symptoms, test, and diagnose". ¶¶ 10C, 12C (emphasis added);

---

[1] An AHJ is a "public agency or its delegate that has legal responsibility and authority for responding to an incident, based on political or geographical … or functional ... range or sphere of authority." Declaration, 85 Fed. Reg. at 15,202; *see also* Fourth Amended Declaration, 85 Fed. Reg. at 79,197 (AHJs include "federal, state, local ... authorities and institutions acting on behalf of governmental entities" and directing PREP Act participants regarding COVID-19 countermeasures and COVID-19 mitigation efforts).

- Alleging "Fail[ure] to do *all* things necessary and proper in the circumstances to reduce the risk [COVID-19] expos[ure]". ¶¶ 10G, 12G (emphasis added);

- Alleging "Fail[ure] to initiate *proper* protocols to sanitize defendants' facility. ¶¶ 10J, 12J (emphasis added); and

- Alleging "Fail[ure] to *properly* follow and implement the guidelines and recommendations of the WHO, CDC, LDH". ¶¶ 10N, 12N (emphasis added).

**B. The COVID-19 National Public Health Crisis**

Severe acute respiratory syndrome coronavirus ("SARS-CoV-2" or "COVID-19") besieged the United States in March of 2020, requiring the federal government to coordinate a national response. To that end, the U.S. Department of Health and Human Services ("HHS") Secretary issued a declaration activating the PREP Act to provide a "whole-of nation" response to fighting the COVID-19 pandemic. *See* Declaration, 85 Fed. Reg. 15,198, 15,198 (Mar. 17, 2020) (HHS Secretary determines COVID-19 is "a disease … threat to health [and] constitutes a public health emergency"); *see also* Fourth Amended Declaration, 85 Fed. Reg. 79,190, 79,191 (Dec. 3, 2020) ("there are … substantial federal legal and policy interests, in having a unified whole-of nation response to the COVID-19 pandemic").

Little was known about the virus. *See* Declaration, 85 Fed. Reg. at 15,198 ("[T]he complete clinical picture regarding [COVID-19] is not fully understood …. The outbreak remains a significant public health challenge"). As HHS said:

> COVID-19 is an unprecedented global challenge. As we learn more about the highly contagious pathogen that causes COVID-19, public-health guidance and directives tend to change to reflect the new knowledge. Those changes do not always occur uniformly or simultaneously among scientists and across America[] —leading to uncertainty.

3

Advisory Opinion 20-04, 3 (Oct. 23, 2020). Early in the COVID-19 fight, it was learned that senior citizens were among those who would be hardest hit.[2]

COVID-19 had no vaccine or effective treatment for nearly a year. Instead, the most effective countermeasures to mitigate and prevent the spread of the COVID-19 virus were PPE, such as face masks, respirators, gloves, and gowns, as well as thermometers, hand sanitizer, and COVID-19 tests—all countermeasures encompassed by Plaintiffs' Petition. *See supra*, pp. 2–3 (discussing approved COVID-19 covered countermeasures invoked in Petition); *see also* Fourth Amended Declaration, 85 Fed. Reg. at 79,197 ("[t]o effectively respond, there must be a more consistent pathway for Covered Persons to … administer or use Covered Countermeasures across the nation"). Yet, the pandemic created national shortages of such countermeasures and a surge of healthcare patients. *See* Second Amended Declaration, 85 Fed. Reg. 35,100, 35,101 (June 8, 2020) ("the COVID-19 pandemic has resulted in shortages of … devices that the FDA has authorized"); *see also* Fourth Amended Declaration, 85 Fed. Reg. at 79,192 (recognizing "the strain on healthcare systems" and "the surge of patient demand on facilities").

It became essential to the public health and national security that HHS bolster its healthcare infrastructure grid by marshaling public and private healthcare resources led by a coordinated network of governmental AHJs. Fourth Amended Declaration, 85 Fed. Reg. at 79,194 (COVID-19 "requires a whole-of-nation response that utilizes federal, state, and local distribution channels as well as private-distribution channels"). Through its AHJs, the federal government invoked a nationwide system of state licensed skilled nursing facilities. HHS Response Letter (Aug. 14, 2020). HHS declared skilled nursing facilities, such as Defendant BTW, "healthcare facilities" and

---

[2]  CDC, Frequently Asked Questions (updated Mar. 1, 2020), https://web.archive.org/web/20210312023959/https://www.cdc.gov/coronavirus/2019-ncov/faq.html#People-at-Higher-Risk-for-Severe-IllnessFA.

placed them under the directives of coordinated federal and state AHJs. Declaration, 85 Fed. Reg. at 15,202; Advisory Opinion 20-04, 1 (stating critical role of "healthcare professionals and healthcare companies that are part of a government response to the COVID-19 pandemic"). Indeed, BTW entered an agreement with LDH (an AHJ agent of HHS) to become a "COVID-only" facility housing COVID positive elderly residents for the state and federal government. Supp. Notice of Removal, ¶ 61a, Exhibit E. Upon inquiry as to the breadth of this federal marshalling effort, HHS confirmed that senior living communities were critical partners known under the PREP Act as "program planners." Response Letter (declaring such communities as PREP Act "program planners" and "qualified persons", which manage and operate COVID-19 countermeasure programs and/or facilities).[3] Moreover, HHS broadly set the coverage of the PREP Act defining "use and the administration" of COVID-19 countermeasures to mean the management and operation of countermeasure programs and facilities/locations:

> ***Administration of a Covered Countermeasure*** means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; ***management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures***.

Declaration, 85 Fed. Reg. at 15,200 (emphases added) (PREP Act applies to "a slip-and-fall injury or vehicle collision by a recipient receiving a countermeasure at a retail store serving as an administration or dispensing location that alleges, for example, lax security or chaotic crowd control").

---

[3] "Program planners" are "a State or local government, including … a person employed by the State or local government, or other person who supervised or administered a program with respect to the administration … or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who… provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b)." §247d-6d(i)(6); *see also id.* at (i)(2)(iii) (a program planner is a "covered person").

C.     **Legislative History Of The PREP Act**

*1. The PREP Act And Public Health Threats*

The PREP Act is just one component of the HHS's broad authority under the larger Public Health Service Act ("PHSA"). 42 U.S.C. §201, *et. seq.* In establishing the PHSA, Congress entrusted HHS to administer public health functions (§202 (("Administration and Supervision of Service")), including federal-state cooperation in times of national health crisis. Title 42 of the U.S.C., Ch. 6A, subchapter 2, part B ("Federal-State Cooperation").

*2. Congress' Delegation Of Authority To HHS In A Public Health Crisis*

Congress charged HHS with the duty of issuing a public health emergency declaration. §247d. HHS then sets the expected duration of the emergency, identifying particular measures to combat the emergency (referred to as "countermeasures") and directing the application and protections to be utilized during the health emergency:

> [I]f the Secretary makes a determination that a disease … constitutes a public health emergency … the Secretary may make a declaration … recommending, under conditions as the Secretary may specify, the … administration, or use of one or more covered countermeasures, and stating that subsection (a) [immunity] is in effect with respect to the activities so recommended.

§247d-6d(b)(1); *see also* §§247d-6d(b)(2), (c)(2) (Secretary sets the categories the "acts and omissions" qualifying for exception to immunity, the period of immunity, the population and geographic scope of immunity, and the immunity for distribution type).

In the context of the COVID-19 pandemic, a "covered countermeasure" is a preventative measure used to "diagnose, mitigate, prevent or treat" COVID-19. §247d-6d(i)(1), (7); Declaration, 85 Fed. Reg. at 15,202 (Covered Countermeasures include any device used in the administration of any such product); Second Amended Declaration, 85 Fed. Reg. at 35,102 (Covered Countermeasures include any device used to "limit the harm from COVID– 19"). These

covered countermeasures include, but are not limited to, such items as personal protective equipment ("PPE")—face masks, respirators, gloves, and gowns—as well as thermometers, hand sanitizer, and COVID-19 tests, all of which countermeasures are invoked by Plaintiffs' Petition. *See* Fourth Amended Declaration, 85 Fed. Reg. at 79,194 (countermeasures authorized by the Food and Drug Administration ("FDA") under the FDCA, some of which are listed in Facemask Emergency Use Authorizations;[4] *see also supra,* pp. 2–3 (discussing Plaintiffs' allegations regarding PREP Act Covered Countermeasures).

Under the PREP Act, HHS is authorized to garner participation of private sector entities in national coordinated response and to set protections assured to those participants. *See* §§247d-6d(i)(5) ("private corporations" are "persons" under the PREP Act), (i)(6) ("program planners" are "persons" who supervise or administer countermeasure programs or facilities), (i)(8) (a "qualified person" is an individual authorized to administer countermeasures or a "group of persons so identified in a declaration by the Secretary"); *see also* §§247d-6d(c)(2)(B) (Secretary is "to define the scope of permissible [PREP] civil actions"), (2)(A) (Secretary to determine scope of "acts or omissions … that may qualify as 'willful misconduct'").

The plain language of the PREP Act is purposely adaptive so as to provide HHS with the maximum delegated authority to identify the public health threat, the means by which the nation will address that threat, the partners to be mobilized, and the protections to be provided to said partners. §§247d-6d(b), (c). This exceptional delegation is necessary in light of the evolving and unknown nature of public health threats to the nation. The designation of a public health threat warranting a PREP Act response is appropriately limited in time, molded to the particular

---

[4]FDA, Personal Protective Equipment, https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices/personal-protective-equipment-euas

emergency, and reviewed directly by Congress. §§247d-6d(b)(1–2), (2)(B), (3). Congress intended these designation not be second guessed through litigation. §§247d-6d(b)(7) ("No court … shall have subject matter jurisdiction to review … any action by the Secretary under this subsection"), (9) (Secretary reports direct to Congress within 30-days of any declaration or amendment thereto).

### 3.   *PREP Act Immunity, A Special Federal Court, And A No-Fault Compensation Fund Protects And Encourages Private Partnership In Public Health Emergencies*

To compensate injured persons and to encourage the cooperation of private-sector partners, Congress established both an exclusive federal litigation process (*see* §247d-6d) and a fully funded no-fault claims process (*see* §247d-6e). Congress created absolute immunity for claims connected with combatting a public health emergency, except those alleging willful misconduct (*see* §247d-6d(a)(1)), and then preempted all state law:

> (b)(1) During the effective period of a declaration … no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
>
> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>
> (B) relates to the … use … or the … dispensing, or administration by qualified persons of the covered countermeasure ….

§247d-6d;[5] *see also* Declaration, 85 Fed. Reg. at 15,202 (affirming immunity to covered persons assisting in AHJ public health response); Advisory Opinion 20-01, 2 (May 19, 2020) (PREP Act "immunity covers claims for loss sounding in tort or contract" and "PREP Act immunity must be read in light of the PREP Act's broad, express-preemption provision"); Advisory Opinion 20-04,

---

[5] As a "program planner" (*see* p. 3 *supra*), BTW is a "covered person" under PREP Act's immunity. *See also* Response Letter, 1. As a skilled nursing facility "covered person" identified in HHS's Declaration (*see* 85 Fed. Reg. at 15,199), BTW also is a "qualified person" within the meaning of §247d-6d(i)(8) and PREP Act preemption. *See* Response Letter, p. 2 n. 3.

1 (speaking to "the breadth of PREP Act immunity" and stating "The PREP Act exists, in part, to remove legal uncertainty and risk").

Congress directed that the "sole exception to the immunity from suit and liability of covered persons … shall be for an ***exclusive Federal cause of action*** … for death or serious physical injury proximately caused by willful misconduct". *See* §247d-6d(d)(1) (emphases added); *see also* §247d-6d(e)(1) ("**Exclusive Federal Jurisdiction** An action under [PREP] shall be filed and maintained only in the United States District Court for the District of Columbia" ("D.D.C.")). Congress then details a comprehensive scheme for the litigation of a willful misconduct claim. §§247d-6d(a)(2) (scope and accrual of claims for loss), (c)(1) (liability standard of willful misconduct), (c)(3) (burden of proof), (e) (procedures for willful misconduct claims and appeals thereof to the Circuit Court of Appeals for the District of Columbia).

Congress also provides for an efficient streamlined, publicly-funded no-fault administrative process for claimants. §§247d-6e(a) (Covered Countermeasure Process Fund ("CCPF") for "purposes of providing timely, uniform, and adequate compensation to eligible individuals for covered injuries"), (d)(1) (requires exhaustion of administrative process prior to pursuing litigation in D.D.C.), (d)(2) (tolling of statute of limitations), (d)(4) ("exclusivity" of federal administrative remedy except for "willful misconduct" litigation in D.D.C.), (d)(5) (election to accept administrative compensation or proceed to litigation claim in D.D.C.); *see also* 42 C.F.R. §§110.1–110.100 (regulations related to administrative claims process).

C.   **HHS Also Spearheads The Nation's Critical Infrastructure - Healthcare And Public Health Sector**

During a time of public health emergency, the country relies on its other powerful, systemic tool: the nation's network of critical infrastructure. 42 U.S.C. §5195c. The CIPA defines critical infrastructure to include systems whose incapacity "would have a debilitating impact on security,

national economic security, national public health or safety, or any combination of those matters." §5195c(e). Disruption to our critical infrastructure is to "be rare, brief, geographically limited in effect, manageable, and minimally detrimental to the economy, human and government services, and national security of the United States." §5195c(c)(1).

Critical infrastructure includes the Healthcare and Public Health sector which is overseen and directed by HHS. *See* Presidential Policy Directive 21 -- Critical Infrastructure Security and Resilience, The White House (Feb. 12, 2013); *see also* Executive Order 13944, 85 Fed. Reg. 49,929, 49933 (Aug. 6, 2020) (citing Presidential Directive 21); Executive Order 13800, 85 Fed. Reg. 22,391, 22,393 (May 11, 2017) (same).[6] The effective activation of the nation's critical healthcare infrastructure relies upon the participation of private actors, like BTW: "[p]rivate businesses, government, and the national security apparatus increasingly depend on an interdependent network of critical physical and information infrastructures." §5195c(b)(2); *see also* §5195c(c)(3) (the continuity of essential federal government functions depends on "public-private partnerships involving corporate and non-governmental organizations").

HHS enlisted BTW as part of the private healthcare infrastructure during the unprecedented national emergency. *See* Declaration, 85 Fed. Reg. at 15,202 (activating state licensed facilities that are "authorized in accordance with the public health and medical emergency response of the AHJ"); Advisory Opinion 20-04, 1 (invoking the critical role of "healthcare professionals and healthcare companies that are part of a government response to the COVID-19 pandemic").

---

[6] Cybersecurity & Infrastructure Security Agency, *Healthcare and Public Health Sector*, https://www.cisa.gov/healthcare-and-public-health-sector.

## III. ARGUMENT AND CITATIONS OF AUTHORITY

### A.   The PREP Act Requires That Any Litigation Of This Case Must Be In Federal Court

There are certain matters so central to the federal government's purpose and interests that Congress directs the affirmative divestiture of concurrent jurisdiction and assures that claims involving those matters will be heard and maintained only in the federal court system. *Tafflin v. Levitt*, 493 U.S. 455, 459 (1990) ("Congress affirmatively ousts the state courts of jurisdiction over a particular federal claim"), citing *Claflin v. Houseman*, 93 U.S. 130, 137 (1876) ("Congress may, if it see[s] fit, give to the Federal courts exclusive jurisdiction") *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990). Where Congress has demonstrated the intent to so dominate an area of the law, it not only completely preempts a state cause of action but it transforms it into a federal claim to be litigated in federal court. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.,* 463 U.S. 1, 23–24 (1983).

### 1. The PREP Act Expressly Provides For An "Exclusive" Federal Cause of Action Through An "Exclusive" Federal Litigation and Administrative Process

The PREP Act contains an express "exclusive Federal cause of action":

> [T]he sole exception to the immunity from suit and liability of covered persons … shall be for an ***exclusive Federal cause of action*** against a covered person for death or serious physical injury proximately caused by willful misconduct….

§247d-6d(d)(1) (emphases added). All other claims are barred by immunity (*see* §247d-6d(a)(1)) and totally preempted (*see* §247d-6d(b)(8)) by the "exclusive" and complete federal administrative and litigation process provided by the Act. §§247d-6e(a), (d)(4) (the administrative remedy "shall be exclusive of any other civil action or proceeding for any claim or suit this section encompasses," except that litigation remedy provided by §247d-6d(d)(1). Congress did not have to provide that broad and complete a remedy under the PREP Act in order to require federal jurisdiction over COVID-19 countermeasure litigation, but it did. §§247d-6d, 247d-6e.

The most comparable statutory scheme to the PREP Act is the Air Transportation Safety and System Stabilization Act, ("ATSSSA"), Pub.L. No. 107-42, 115 Stat. 230 (2001), codified in the aftermath of the 9/11 terrorists attacks. *Rachal v. Natchitoches Nursing & Rehabilitation Center LLC*, NO. 1:21-CV-00334, 3–4 n. 3 (W.D. La. Aug. 9, 2021) (comparing PREP and the ATSSSA and finding the PREP Act is a complete preemption statute).In finding ATSSSA a complete preemption statute, the *In re WTC Disaster Site* court notes that Congress enacted three "principal components": 1) the creation of a Victim Compensation Fund (like PREP Act's CCPF); 2) the creation of a federal cause of action as the exclusive judicial remedy for damages arising from the 9/11 air crashes (like PREP Act's exclusive federal cause of action); and 3) the "concentration" of those 9/11 air crash cases in the specific federal court of the Southern District of New York (like PREP Act's concentration of COVID-19 countermeasure cases in the D.D.C.). *In re WTC*, 414 F.3d 352, 373 (2005). Those elements are present in this Action. The *WTC* court found these three statutory components combine to completely preempt state law claims under the *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003) test and require federal removal jurisdiction.[7]

As *WTC* observed, it is of particular import that Congress designated a special federal litigation forum:

> Congress intended all suits asserting the ATSSSA-created cause of action be litigated only in [one] federal court [the Southern District of New York]. To give effect to that intent where such an action has been commenced in state court, this provision must be interpreted as authorizing the removal of the action to the federal court.

---

[7] PREP has more comprehensive preemption and claims provisions. *Compare id.* at 373–374 *with* §§247d-6d(b)(8), (c)(1, 3), (e)(1–10); §§247d-6e(a), (d)(1, 2, 4, 5), 42 C.F.R. §§110.1–110.100.

12

414 F.3d at 375. In the PREP Act, contrary to Plaintiffs' argument (*see* Mot. to Dismiss, pp. 4–5, n. 1), Congress specially created a three-judge court in the D.D.C. to hear all "willful misconduct" PREP cases. 42 U.S.C. §247d-6d(e)(5); *see also In re WTC*, 414 F.3d at 375–376 (like the PREP Act, the ATSSSA was promulgated to streamline the litigation aftermath of a national disaster); *but see Russel v. Irving Place Associates LP*, 20-CV-805, R. & R. at *11 (W.D. La. Aug. 5, 2021) (finding the PREP Act does not contain a specific jurisdictional grant to federal court).[8] This constitutes a "special court" under 28 U.S.C. §2284, which provides that such a three-judge court "shall be convened when otherwise required by Act of Congress." §2284(a). Congress intended to place all PREP litigation in one, exclusive specially created *federal* court—the D.D.C.—and not in state court systems. *Gulf Offshore v. Co. v. Mobil Oil Corp*., 453 U.S. 473, 478 (1981) (concurrent jurisdiction to hear civil claims is divested "by an explicit statutory directive" or an "incompatibility" with federal interests).

Where such a statutory framework has been created, the PREP Act "must be interpreted as authorizing the removal of the action to the federal court." *In re WTC*, 414 F.3d at 375 ("although state law would provide a cause of action in the absence of contrary federal law, … establishing an exclusive federal remedy undeniably bespeak[s] an intent to displace state-law remedies entirely for such damage claims"); *see also Avco Corp. v. Aero Lodge No. 735, Int'l. Ass'n of Mech.s and Aerospace Workers,* 390 U.S. 557, 560 (1968) (any state law sought to be asserted will be "absorbed as federal law and will not be an independent source of private rights"); *Rachal*,

---

[8] *But see* §247d-6d(e)(1, 5)(express "exclusive Federal jurisdiction"); and Defs.' Mot. to Dismiss, 14–15 n. 7 (discussing the split in this district courts pending Fifth Circuit Appeal of *Mitchell v. Advanced HCS*, 2021 WL 1247884 (N.D. Tex. Apr. 5, 2021), appealed, No. 21-10477 (5th Cir.).

*4 n 3 (finding Congress intended the PREP Act to exclusively encompass claims related to cover countermeasure administration or use).[9]

### 2. The PREP Act Completely Preempts State Causes of Action

The Supreme Court has set a removal doctrine of complete preemption in the two-prong *Beneficial* test: 1) whether Congress has provided an "exclusive federal cause of action"; and 2) whether Congress "sets forth procedures and remedies governing that cause of action". *Beneficial,* 539 U.S. at 8; *Franchise Tax*, 463 U.S. at 23–24 (removal jurisdiction exists where preemptive force of statute is "so powerful as to displace entirely any state cause of action"—such a suit is "purely a creature of federal law"). The PREP Act satisfies both prongs of the *Beneficial* test.

First, Congress expressly created an "exclusive federal cause of action". 42. U.S.C. §247d-6d(d)(1). Congress goes on to provide covered persons with absolute immunity in all but the exclusive federal cause of action for willful misconduct claims. §247d-6d(a)(1) ("covered person shall be immune from suit and liability under Federal and State law with respect to all claims" caused by, arising out of, relating to or resulting from countermeasures). Congress then amplified that nullification of state court claims with broad preemption. §247d-6d(b)(8); *see also Bruesewitz v. Wyeth, LLC*, 562 U.S. 223, 253 (2011) (in finding that the National Childhood Injury Vaccine Act ("NCIVA") preempts state law, the dissent notes that the PREP Act is the standard bearer for preemptive force, explaining that, by comparison, NCIVA is deficient because it lacks the type of "categorical (*e.g.*, 'all') and/or declarative language (*e.g.,* 'shall')" of the PREP Act).

> Where the language of the statute plainly indicates that Congress intended preemption, '[w]e must give effect to th[e] plain language unless there is good

---

[9] Because exclusive jurisdiction lies in a particular federal court—D.D.C.— this Action can be dismissed or transferred via 28 U.S.C. §1631. Defs.' Mot. to Dismiss, 14–15, 17–19); *see also Franco v. Mabe Trucking Co., Inc.,* 3 F.4th 788, 795 (5th Cir. 2021) ("[§1631] therefore requires a transfer when a district court lacks either type of jurisdiction").

reason to believe Congress intended the language to have some more restrictive meaning.'

*In re WTC*, 414 F.3d at 371 ("The question of whether federal law preempts state law is fundamentally a matter of Congress's intent.") "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law". *Id.* at 372 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)). Here, as in the aftermath of 9/11, "state law is nullified to the extent that it actually conflicts with federal law" thereby meeting the first prong of the *Beneficial* test. *In re WTC*, 414 F.3d at 372.

Second, Congress saw fit in the PREP Act to set forth extensive "procedures and remedies" governing its exclusive federal cause of action. *Beneficial*, 539 U.S. at 8 (setting second-prong of complete preemption test). District Courts throughout the nation, including this Court, have mistakenly found that the PREP Act does not provide a "civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law." *See e.g.*, *Russel*, R. & R. at *10–11. However, in PREP, Congress expressly provides the scope and accrual of claims for loss (*see* §247d-6d(a)(2)), a liability standard of willful misconduct ((c)(1)), burden of proof ((c)(3)), a choice of law provision ((e)(2)), pleading standard of particularity (e)(3)), pleading requirements of verification and certain materials ((e)(4)), congressional creation of a "three-judge court" in the D.D.C. and direct appeal to Supreme Court from an order granting or denying injunction ((e)(5)), motions practice and discovery process ((e)(6)), parameters for recoverable damages and collateral source issues ((e)(7)), noneconomic damages allowed ((e)(8)), Rule 11 sanctions ((e)(9)), and an interlocutory appeal process in the United States Court of Appeals for the District of Columbia Circuit ((e)(10)). This comprehensive civil action process is extraordinarily precise. "When the federal statute completely pre-empts the state-law cause of

action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law". *Beneficial*, 539 U.S. at 8; *see also Avco*, 390 U.S. 557 (in federal preemption, the state claim "necessarily arises under federal law" and is removable).[10] Indeed, although claimants must first proceed through the CCPF, they may elect to decline their CCPF remedies and proceed to a PREP suit. *Contrast* §247d-6e(d) ("Exhaustion; exclusivity; election") *with Russel*, R. & R. at *11. The extensive process and remedy set out by Congress in the PREP Act meet the second prong of the *Beneficial* test. *Id*.

By virtue of the PREP Act's immunity, preemption, exclusive federal cause of action, and exclusive federal jurisdiction, this Action arises only under federal law, meets both prongs of the *Beneficial* complete preemption test, and is removable to federal court. 28 U.S.C. §§1331, 1441; *see also Beneficial,* 539 U.S. at 11 ("[e]ven though the complaint makes no mention of federal law, it unquestionably and unambiguously claims" that the defendant violated federal law).

### 3. Plaintiffs' Petition "Arises Under" The PREP Act Thereby Creating Federal Removal Jurisdiction

Plaintiffs affirmatively alleged that the misuse, use, and failures to properly administer PREP Act covered countermeasures resulted in Decedent's COVID-19 death. Petition, ¶¶ 10A, B, C, G, J, N; 12A, B, C, G, J, N; *see also discussion supra*, pp. 2–3. By their own hand, and by force of law, Plaintiffs' Petition warrants removal jurisdiction. *Beneficial*, 539 U.S. at 8.

#### a. The PREP Act Applies To "Non-Use" Of Countermeasures

The PREP Act's text covers "acts and *omissions*" and "***administration*** and use". *Compare* §§247d-6d(c), (e) (emphases added); Advisory Opinion 20-04, 6–7 (non-use reasoning is "wrong" because "administration" includes "the management and operation" of a countermeasure program

---

[10] Complete preemption is "rare" because of appeal limitations. 28 U.S.C. §1447(d). *Contra* Pls.' Mot. to Remand, 3.

which is broader than physical use); Advisory Opinion 21-01, 4 (Jan. 8, 2021) (even "decision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning, and is expressly covered by PREP Act"); and *Garcia v. Welltower OpCo Grp. LLC*, 2021 WL 492581, at *8 (C.D. Cal. Feb. 10, 2021) (discussing PREP's application to program planners and denying remand) *with e.g. Jones v. Legacy Management Group of Louisiana, LLC*, 2021 WL 3416993, R.&R., *3 (W.D. La. July 7, 2021). Not, only has HHS told us that the statutory term of "administration" is broader than the term "use" (*see* Advisory Opinion 20-04, 6–7), but the plain meaning of the word demonstrates that point. The word "administer" means: "to manage or supervise the execution, use or conduct of", "to provide or apply" (*e.g.* dispense). *Administer*, Merriam-Webster,  https://www.merriam-webster.com/dictionary/administer  (last accessed September 21, 2021); *see also* §§247d-6d (c)(1)(A), (c)(2)(A), (c)(4), (c)(5)(A), (e)(3)(A).

In addition, HHS has rejected the reasoning rotely cited by remand orders across the nation, because that rationale is based on a narrow view that "clashes" with the text of the PREP Act—specifically, that the PREP Act applies to claims "relating to" the "use or administration" of covered countermeasures. Advisory Opinion 21-01 (citing §247d-6d(a)(1)). As HHS has explained, the PREP Act will apply so long as there is not a "complete absence" of some form of decision-making with regard to countermeasures. *Id.*; *see discussion, supra,* pp. 2–3 (specific references to Petition); *see also* Advisory Opinion 21-01, 4 ("circumstances where plaintiff pleads … failure to make any decisions whatsoever, thereby abandoning [the] duty to act as a program planner … is a small hole through which to wiggle"). The use and administration of countermeasures and the management and operation of BTW's countermeasure program and facility, albeit allegedly inadequate, were affirmatively stated by Plaintiffs' Petition and cannot now be recast. Petition, ¶¶ 10A, B, C, G, J, N; 12A, B, C, G, J, N; Notice of Removal, ¶¶ 8, 26,

32–33, 39–48; *see also c.f. Hook v. Morrison Milling Co.*, 38 F.3d 776, 780 (5th Cir. 1994) ("we look at the complaint as it existed at the time the petition for removal was filed, regardless of any subsequent amendments"). Thus, Plaintiffs' "non-use" rationale is due to be rejected.

### b. HHS's Interpretation Of The PREP Act Is Entitled To The Force Of Law

Contrary to Plaintiffs' argument at page 5 of their Motion, HHS's Declaration, Amended Declarations, and Advisory Opinions should be afforded the controlling force of law that Congress, through the PREP Act, requires. §247d-6d(b)(7). As directed by Congress, HHS issued a Declaration, nine Amended Declarations and six Advisory Opinions spanning two presidential administrations regarding the evolving COVID-19 crisis and its nationally coordinated response. These HHS authorities, including the Advisory Opinions, have the force of law. Fourth Amended Declaration, 85 Fed. Reg. at 79,191 n. 5 (citing examples of OCG Advisory Opinions that the Declaration "must be construed in accordance with"); Statement of Organization, Functions, and Delegations of Authority, 85 Fed. Reg. 47,228, 47,230 (July 7, 2020) (Office of General Counsel ("OGC") is authorized to promulgate Advisory Opinion directives and issue such legal opinions as may be necessary to carry out the responsibilities of HHS). Accordingly, no deference analysis is necessary or allowed due to Congress' directive under §247d-6d(b)(7) ("No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection").

Should the Court nevertheless wish to undertake a deference analysis, HHS's publications—the Declaration, Amendments and Advisory Opinions incorporated therein—are entitled to *Chevron* "controlling" deference. *Chevron U.S.A,, Inc. v. Nat. Resource Defense Council*, 467 U.S. 837, 843–44 (1984); *see also* 85 Fed. Reg. at 79,195 ("This Declaration is a 'requirement' under the PREP Act"); *Garcia*, at *6 (C.D. Cal. Feb. 10, 2021) (applying *Chevron*

deference in denying remand under the PREP Act). To the extent the Advisory Opinions interpret HHS's Declaration and Amendments, those Advisory Opinions are entitled to *Auer* controlling deference. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (agency's interpretation of its own regulations are controlling unless "plainly erroneous or inconsistent with the regulation"). HHS's Response Letter cited herein, is entitled to "considerable weight" or "respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944). *See Christensen v. Harris Cty.*, 529 U.S. 576 (2000).

**B.**  **The Embedded Federal Question Doctrine Requires This Action Be In Federal Court**

The *Grable* doctrine captures the "commonsense notion" that a federal court ought to hear claims "recognized under state law that nonetheless turn on substantial questions of federal law." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005); *see also* Fourth Amended Declaration, 85 Fed. Reg. at 79,197 (demonstrating the PREP Act policy supporting the *Grable* criteria). If a claim invariably turns on substantial, unsettled, and disputed questions of federal law, the case belongs in federal court because it is better for the sake of uniformity and federal interests to have a federal court resolve those key questions of federal policy and interpretation. *Id.* at 313–314. Because the application of the PREP Act turns on first impression issues of substantial and unresolved questions of federal law, the claims necessarily trigger federal subject matter jurisdiction under 28 U.S.C. §1331. *Grable*, 545 U.S. at 317–318; *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable* at 314). Factors to consider are whether the complaint raises: 1) a pure question of law; 2) a question that will control other cases; and 3) a question in which the government has a strong interest. *Singh v. Duane Morris LLP*, 538 F.3d 334, 339–40 (5th Cir. 2008)

A substantial federal question exists as to whether the exclusive, special federal court afforded under the PREP Act will be provided to program planners as a result of their partnership

in the midst of a national crisis. *Grable*, 545 U.S. at 313. There is a reason why Congress created a special three-judge federal court with a unique relationship with administrative agencies and an exclusive forum for an "exclusive Federal cause of action": it is because pandemic issues that invoke matters of national critical infrastructure, public health, and security raise uniquely federal interests and questions. *Id.* Such complex threats exercise our nation's structure of federalism and the role of federal agencies to their fullest extent. This COVID-19 pandemic response, and the broad coordination it necessitated, involves highly technical federal administrative matters. *See e.g.* §§247d-6d(b), (i)(9) (referencing "security countermeasures" and the country's National Strategic Stockpile). Such matters "justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. "[T]here is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law claim." *Id.* at 319–320. The questions of almost daily urgent federal directives, national infrastructure and public health threats, an exclusive federal cause of action, and a special federal court, create substantial federal questions and require this Action's removal.

## C.    **Because BTW Is A Federal Officer, This Action Was Removable Under §1442(a)(1)**

Federal officer removal is permitted in a civil action which is "commenced in a State court … against or directed to … any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office … ." 28 U.S.C. §1442(a)(1). The statute was designed to give federal officials a "federal forum in which to assert federal defenses". *Butler v. Coast Electric Power Ass'n*, 926 F.3d 190, 195 (5th Cir. 2019); *see also Caver v. Central Alabama Electric Cooperative*, 845 F.3d 1135, 1142 (11th Cir. 2017) (§1442(a)(1) is "an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official

duties."). This "statute's 'basic' purpose is to protect the Federal Government from [state] interference with its 'operations.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007).

"Unlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum." *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466 (3d Cir. 2015); *see also Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (urging courts to avoid "a narrow, grudging interpretation of § 1442(a)(1)") (internal quotations omitted); *Butler* at 195 (federal officer removal is "not narrow or limited"). The right of federal officer removal is "absolute" whenever a suit in state court is for any act "under color of federal office, regardless of whether the suit could originally have been brought in a federal court." *In re Commonwealth,* 790 F.3d at 466 (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)). Federal officer removal is an exception to the well-pleaded complaint rule, as "the federal-question element is met if the defense depends on federal law." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999).

Because BTW is not itself a federal agency or employee, the four-pronged *Latiolais* test determines the validity of this removal to federal court. First, BTW is a person within the meaning of §1442(a)(1). Second, BTW performed the actions for which it is being sued pursuant to federal officer direction. Third, BTW raises a colorable defense. And fourth, there is a connection between Plaintiffs' allegations and BTW's federally directed acts. *Latiolais*, 951 F.3d at 291.

### 1. BTW Is A "Person" Within §1442(a)(1)

Unless context indicates otherwise, "person" as used in Congressional acts includes corporations. 1 U.S.C. § 1; *see also Anderson v. Avondale Indus., Inc.,* 1994 WL 679827, at *2 (E.D. La. Dec. 5, 1994). The Fifth Circuit has determined that 28 U.S.C. § 1442(a) applies to "private persons and corporate entities". *Butler*, 926 F.3d at 201; *see also Winters v. Diamond*

*Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998), modified on other grounds, *Latiolais, 951 F.3d 286.* As a limited liability corporation, BTW is a "person" within §1442(a)(1).

### *2.* **BTW Performed Acts Under Direction Of Federal Officer**

As a "program planner" working under HHS and AHJs, specifically as a "COVID only" facility, and as a component of the nation's critical healthcare infrastructure, BTW was enlisted to fulfill a basic governmental task, which task the government could not provide in a time of national public health crisis afflicting particularly elderly residents in congregate living facilities. Controlling law provides this criterion is met when the issue at hand at a minimum "involve[s] an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Butler*, 926 F.3d at 201(where federal government enlisted private cooperatives to assist in providing lower electric rates to rural America, private electric cooperative became "instrumentalities of the United States" and had federal officer protections under §1442); *see also Latiolais*, 951 F.3d at 291(shipyard contractor "subject to government plans and specifications" entitled to federal officer removal).

Like the electric cooperative in *Butler*, the federal government's response to COVID turned BTW into an instrumentality of the United States for a whole-nation response. 926 F.3d 190. And, like the system of private electric cooperatives to promote a rural electric grid, Congress and HHS here designed a system of national public health AHJs and private program planners directed by almost daily instructions from a federal agency, federal officers, or their designees, which instructions were consistent with the goals of the CIPA and the PREP Act. *Id.; see also Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) ("'Acting under' covers situations … where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete"); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1088 (6th Cir. 2010) ("acting under" test satisfied in absence of a contract if government would have had to perform the task).

Here the federal government directed BTW with detailed plans and specifications well beyond typical regulations, to-wit: when and how to use and conserve PPE; when, how, and on whom to use COVID-19 tests; when to permit COVID-19 stricken staff to return to work; how to mitigate staff shortages including when to permit COVID-19 positive but asymptomatic staff to return to work; and, how to handle the isolation of residents infected with COVID-19 or under investigation for COVID-19.[11] These issuances created "strong government intervention" which went beyond the "mere auspices of federal direction" due to the unprecedented pandemic. *Fung v. Abex Corp.,* 816 F. Supp. 569, 572 (N.D. Cal. 1992); *see also Watson*, 551 U.S. at 153 ("federal regulation alone" is not enough). A specific instruction from a federal officer or a detailed regulation to compel specific conduct satisfies the "acting under" requirement. *Winters*, 149 F.3d. 387. This coordinated federal response by and through its private partners cannot now be second guessed, interfered with, or reviewed by state laws or courts. *Watson*, 551 U.S. at 150.

---

[11] *See, c.f.* CMS, "CMS Prepares Nation's Healthcare Facilities for Coronavirus Threat" (Feb. 6, 2020), https://www.cms.gov/newsroom/press-releases/cms-prepares-nations-healthcare-facilities-coronavirus-threat; CMS Update and Interim Guidance on Outbreak of 2019 Novel Coronavirus (Feb. 1, 2020), https://emergency.cdc.gov/han/HAN00427.asp (CDC screening protocol); CMS Guidance for Infection Control and Prevention Concerning Coronavirus (COVID-19): CMS Guidance for use of Certain Industrial Respirators by Health Care Personnel (Mar. 10, 2020), https://www.cms.gov/files/document/qso-20-17-all.pdf (federal government direction in face of PPE shortage); HHS, Emergency Use Declaration, Federal Register/ Vol. 85, No. 47 (Mar. 10, 2020),         https://www.govinfo.gov/content/pkg/FR-2020-03-10/pdf/2020-04823.pdf;         CMS Guidance for Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes (Mar. 13, 2020), https://www.cms.gov/files/document/qso-20-14-nh-revised.pdf; CMS, COVID-19 Long-Term Care Facility Guidance (April 2, 2020), https://www.cms.gov/files/document/4220-covid-19-long-term-care-facility-guidance.pdf ("As long-term care facilities are a critical part of the healthcare system"); CMS, "Trump Administration Announces New Nursing Homes COVID-19 Transparency Effort" (Apr. 19, 2020), https://www.cms.gov/newsroom/press-releases/trump-administration-announces-new-nursing-homes-covid-19-transparency-effort; *see also* Declaration, 85 Fed. Reg. at 15,202 (activating state licensed medical facilities under AHJ direction); Advisory Opinion 20-04, 1 (critical role of "healthcare companies that are part of a government response to the COVID-19 pandemic"); Response Letter.

BTW is entitled to the protections and forum that federal surrogacy affords. *Butler*, 926 F.3d at 195 (permitting removal by electric cooperative for failure to remit "excess fees" to members where the Rural Electrification Administration instructed how administer said fees).

### 3. BTW Has Asserted A Colorable Defense

"The federal officer removal statute is not 'narrow' or 'limited.'" *Willingham*, 395 U.S. at 406. A court is not constrained by plaintiffs' allegations. *Latiolais*, 951 F.3d at 290 ("[S]ection 1442(a) permits an officer to remove a case even if no federal question is raised in the well-pleaded complaint, so long as the officer asserts a federal defense in the response.")

> A colorable federal defense "does not need to be 'clearly sustainable,' as § 1442 does not require a ... person acting under [a federal official] to 'win his case before he can have it removed.'" [Footnote cite omitted] Rather, the defense need only be colorable: it must not be "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous."

*Butler*, 926 F.3d at 195; *see also Latiolais* at 297 (so long as a defense is "plausible", it "need not be 'clearly sustainable.'"). The allegations and statutory authority which govern this case assert a colorable defense. Notice of Removal, ¶¶ 17, 20, 23, 25, 43, 51, 53–56, 69; *see also*, *supra* pp. 2–3, 8–9, 11–16; Defs.' Mot to Dismiss. BTW has asserted defenses of federal immunity and preemption, failure to exhaust administrative remedies and improper venue/jurisdiction for failure to file this case in the D.D.C. Notice of Removal, ¶¶ 17, 20, 23, 25, 43, 51, 53–56, 69; 42 U.S.C. §§247d-6d(a)(1), (b)(1), (e)(1); §§247d-6e(a), (d)(4). These defenses need not be substantiated: the court must "avoid premature merits determination." *Latiolais*, at n. 10.

### 4. Plaintiffs' Claims Are Connected To BTW's Acts Under Federal Officer Direction

The final prong of the Fifth Circuit's federal officer removal test is that the allegation of the complaint is "connected to" the defendant's asserted authority. *Latiolais*, 951 F.3d. at 296. The

Fifth Circuit has adopted the more liberal "connection" test to reflect Congress's change in §1442 to the broader "for *or relating to*" language. *Id.* at 291–92.

Plaintiffs themselves acknowledged that BTW is a state licensed facility following (inadequately, they contend) the directives of the CDC and LDH. Petition, ¶ 7. This action raises claims against the very COVID-19 program plans and facility operations directed by HHS. Declaration 85 Fed. Reg. at 15,200; *see also* Petition, ¶¶ 7 (attacking BTW's infection control plan within its facility). These plans and operations were specifically directed by the federal government through HHS and its AHJs. *See* note 10, *supra*. Accordingly, Plaintiffs' allegations necessarily question such federal direction demonstrating the requisite "connection".

BTW meets all four-prongs of the *Latiolais* test for §1441(a)(1) federal officer removal.

### IV. <u>CONCLUSION</u>

As a program planner working under HHS's AHJs, and as part of the nation's critical healthcare infrastructure, BTW was marshalled into service by the federal government to coordinate with and be directed by HHS in the battle against COVID-19. As result, BTW is entitled to the protections Congress provides, specifically a federal forum. Congress spoke plainly in enacting both the PREP Act and the Federal Officer Removal statute. Regarding the PREP Act, one wonders what Congress was intending to do if it was not intending to create a broad immunity and preemptive statutory scheme in an exclusively federal forum to streamline claims and limit liability resulting from a national pandemic. Nothing suggests Congress intended to create an additive, supplemental remedy to the common law claims of fifty states.

THEREFORE, Plaintiffs' Motion to Remand is due to be denied.

Respectfully submitted,

By: /s/ Ronald E. Raney_____
 RONALD E. RANEY, Bar Roll #8570

**LUNN IRION LAW FIRM, LLC**
A Limited Liability Company
P. O. Box 1534
Shreveport, LA 71165-1534
Tel. (318) 222-0665
Fax (318) 220-3265

By: /s/ Teresa Pike Tomlinson
TERESA PIKE TOMLINSON
**HALL BOOTH SMITH, P.C**
Georgia Bar No. 466930
Pro Hac Vice
1301 First Avenue
Suite 100
Columbus, GA 31901
Tel: 706-494-3818
Fax: 706-322-5469
Email: ttomlinson@hallboothsmith.com

**ATTORNEYS FOR PMG OPCO-WASHINGTON, LLC D/B/A BOOKER T. WASHINGTON SKILLED NURSING & REHABILITATION CENTER, AND KOURTNEY BROWNLEE**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on September 22, 2021, a copy of the foregoing was filed with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

 /s/ Ronald E. Raney
Of Counsel