UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TOLA MAE JAMES ET AL | CIVIL ACTION NO. 21-cv-2407 |
| VERSUS | CHIEF JUDGE HICKS |
| P M G O P C O – WASHINGTON, LLC, ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

John Henry James was a resident of Booker T. Washington Skilled Nursing & Rehabilitation ("BTW"). His survivors filed this action based on allegations that, through the negligence of the facility, Mr. James was exposed to coronavirus and died of COVID-19 on May 28, 2020. The family filed this negligence action in state court against BTW and its executive director Kourtney Brownlee.

Defendants removed the case based on assertions that (1) there is federal question jurisdiction based on complete preemption effected by the Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d ("PREP Act"), (2) there is federal question jurisdiction under the Grable doctrine because the PREP Act presents a substantial federal question, and (3) federal officer removal is appropriate because nursing home officials were acting in accordance with protocols issued by the federal government. Before the court is Plaintiffs' Motion to Remand (Doc. 10). For the reasons that follow, it is recommended that the motion be granted.

**PREP Act and Complete Preemption**

Plaintiffs allege in their petition that Mr. James was a longtime resident of the BTW facility. Soon after the World Health Organization declared COVID-19 a pandemic in March 2020, Mr. James was exposed to the coronavirus, became seriously ill, and died on May 28, 2020. Plaintiffs allege that the nursing home and its director are responsible for Mr. James' death because of their "broken promises, grossly negligent actions, and inactions." The petition alleges that the facility and its director are liable for "administrative negligence" because they failed to properly eliminate or minimize the risk of exposure, did not properly monitor and detect symptoms, did not provide appropriate medical attention, did not initiate proper protocols to sanitize the facility, failed to properly train and supervise staff, and failed to properly follow and implement the guidelines and recommendations of regulatory authorities.

Passed in 2005, the PREP Act authorizes the Secretary of Health and Human Services ("HHS") to issue a declaration determining that "a disease or other health condition or other threat to health constitutes a public health emergency." 42 U.S.C. § 247d-6d(b). If applicable, the PREP Act provides immunity to covered persons from liability for claims arising out of the use of a covered countermeasure. Specifically, "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure." 42 U.S.C. §

247d-6d(a)(1). In March 2020, the Secretary of HHS issued a declaration under the PREP Act regarding the COVID-19 pandemic. 85 Fed. Reg. 15,198 (Mar. 17, 2020).

When the Secretary issues a declaration, it establishes in the Treasury an emergency fund designated as the "Covered Countermeasure Process Fund" ("Process Fund") "for purposes of providing timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration" and is funded by emergency appropriations. 42 U.S.C. § 247d-6e(a). The Process Fund is administered by the Secretary. 42 U.S.C. §§ 247d-6e(a), 247d-6e(b)(1).

The courts are generally barred from involvement in the compensation process. "No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary" in administering the Process Fund, § 247d-6e(b)(5)(C), and compensation through the Process Fund "shall be exclusive of any other civil action or proceeding for any claim or suit this section encompasses," § 247d-6e(d)(4). The only exception is if there is "death or serious physical injury proximately caused by willful misconduct," § 247d-6d(d)(1), in which case an action may "be filed and maintained only in the United States District Court for the District of Columbia," § 247d-6d(e)(1).

Defendants argue that the PREP Act completely preempts Plaintiffs' state-law claims. Plaintiffs respond that the Act may provide a potential defense that can be raised by Defendants in state court, but it does not completely preempt Plaintiffs' state-law claims and make them federal in nature. After the initial briefing of the motion to remand was

completed, the Fifth Circuit decided Mitchell v. Advanced HCS, LLC, 28 F.4th 580 (5th Cir. 2022) and spoke to the issue.

Mitchell arose when a resident of a nursing home passed away in May 2020 from complications from COVID-19, her family filed suit in state court for negligence, and the nursing home removed the case based on the same arguments presented here. The first issue addressed was whether the PREP Act completely preempts the family's state-law negligence claims. The Court held: "The Act does not completely preempt Mitchell's state-law negligence claims." Id. at 586. The Court observed that the only cause of action created by the Act is for willful misconduct, but the plaintiffs asserted only negligence causes of action. The same is true in this case.

Mitchell noted that two other federal Courts of Appeals have addressed near-identical arguments in near-identical cases and likewise rejected them. See Maglioli v. Alliance HC Holdings, LLC, 16 F.4th 393 (3rd Cir. 2021) and Saldana v. Glenhaven Healthcare, LLC, 27 F.4th 679 (9th Cir. 2022). Mitchell stated that the reasoning in those decisions was sound and persuasive. Since then, the Fifth Circuit again rejected the complete preemption argument in Perez ex. rel. Estate of Lozano v. Southeast SNF, LLC, 2022 WL 987187 (5th Cir. 2022) (unpublished), and the Seventh Circuit came to the same conclusion in Martin v. Petersen Health Operations, LLC, 37 F.4th 1210 (7th Cir. 2022). Perez and Martin were both a nursing home death cases.

This court allowed supplemental briefing after Mitchell issued. Defendants argue that Mitchell, Perez, and Maglioli reached the wrong result and are not consistent with Supreme Court precedent on the complete preemption doctrine. The Fifth Circuit's

published decision in Mitchell is binding on this court and must be followed in this indistinguishable case. Campbell v. Sonat Offshore Drilling, Inc., 979 F.2d 1115, 1121 n.8 (5th Cir. 1992) ("It has been long established that a legally indistinguishable decision of this court must be followed by other panels of this court and district courts unless overruled en banc or by the United States Supreme Court."). Accordingly, the complete preemption basis for removal should be rejected.

**The Grable Doctrine**

The Supreme Court has recognized that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 125 S.Ct. 2363 (2005). Defendants argued in their original memorandum in opposition to the motion to remand that the Grable doctrine supports removal in this case. Mitchell addressed the issue in detail and concluded, "Grable does not apply." Mitchell, 28 F.4th at 588-89. Defendants did not return to the Grable argument in their post-Mitchell supplemental brief. This court is bound by Mitchell so must reject any attempt to remove this substantially similar case based on the Grable doctrine.

**Federal Officer Removal**

The federal officer removal statute, 28 U.S.C. § 1442(a), provides that a civil action commenced in state court directed against any of certain listed persons may be removed by them to a federal district court. The list includes the United States "or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof … ." To remove under the statute, a defendant must show (1) it has asserted a

colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions. Latiolais v. Huntington Ingalls, Inc., 951 F.3d 286, 290 (5th Cir. 2020) (en banc). "The basic purpose of the statute is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Government acting within the scope of their authority." Saldano, 27 F.4th at 684, citing Watson v. Philip Morris Cos., Inc., 127 S.Ct. 2301, 2306 (2007).

Mitchell held that the nursing home failed to satisfy the third prong of the test, which requires that the removing party was acting pursuant to a federal officer's directions. The Court explained that for a private party to qualify it must have a subordinate relationship to the federal officer or agency, which typically involves subjection, guidance, or control. Simply complying with the law is not enough. Mitchell, 28 F.4th at 589. And merely being a highly regulated firm does not allow removal. Id.

The nursing home in Mitchell argued that it was designated as a "critical infrastructure" and was enlisted in the federal government's efforts to combat COVID-19, subjecting it to the government's direction under its close supervision. The Court noted that the nursing home did not, however, cite any record evidence of enlistment, direction, or close supervision. The Court rejected the argument that a critical infrastructure designation was sufficient, noting that large sectors of the economy received such designations.

BTW argues that it is different because it served a unique role in the government's efforts to address the pandemic. Executive Director Kourtney Brownlee testifies in an affidavit that from at least May 1, 2020 through October 1, 2020, BTW was a "Louisiana COVID-only facility." As such, BTW had in residence only individuals who were COVID-positive and COVID-recovered. The facility received COVID transfers from other facilities throughout Louisiana and other states. Ms. Brownlee states that BTW worked in direct coordination with the Louisiana Department of Health and Hospitals and under the direction of the Centers for Medicare and Medicaid Services ("CMS") to mitigate and prevent the spread of COVID-19 among senior citizens. She points to documentation of inspections of BTW in May, June, July, and September 2020 to assure compliance with state licensing standards and/or federal conditions of participation. The reports from those inspections state that the facility was found in compliance with federal regulations regarding infection control and had implemented the federal recommended practices to prepare for COVID-19.

The nursing home in Mitchell made a similar argument that the Centers for Disease Control and CMS had engaged nursing homes in a uniquely mandated role to aid in the government's efforts, and it pointed to agency-authored documents. The Court found them to be unavailing because they consisted of permissive guidance, best practices, and the like. The closest any of the documents came to any mandatory direction was the statement by CMS that it would conduct surveys to investigate compliance with existing regulations. Mitchell rejected the argument that this was sufficient to permit federal officer removal

because "close monitoring of mere compliance is not enough." Mitchell, 28 F.4th at 590-91.

BTW has shown that it was subject to the same sorts of guidelines and regulations at issue in Mitchell. It has presented evidence that it was inspected and found in compliance with federal regulations, but BTW has not pointed to any evidence that a federal agency or officer directly guided or controlled its actions in relevant respects. The nursing home was highly regulated and inspected to ensure compliance with the law, but that was not sufficient to allow federal officer removal. As Saldano explained, the nursing home demonstrated that it operated as a private entity subject to government regulations, and that during the COVID-19 pandemic it received additional regulations and recommendations from federal agencies. That was not enough to make the nursing home be "acting under" a federal officer or agency as contemplated by the federal officer removal statute. Saldano, 27 F.4th at 686. Mitchell controls the outcome of this issue, on which no circuit court has sided with Defendants' arguments. The federal officer removal statute is inapplicable to these defendants.

Accordingly,

It is recommended that Plaintiffs' Motion to Remand (Doc. 10) be granted and that this case be remanded to the First Judicial District Court, Caddo Parish, Louisiana.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 22nd day of August, 2022.

Mark L. Hornsby
U.S. Magistrate Judge